FILED
CHARLOTTE, NC

SEP 11 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

1  UNITED STATES DISTRICT COURT

2  WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

3  ANDRIVIA FRANCES WELLS,

4  Plaintiff,  No.: 3:25 - cv - 700 - GCM

5  v.

6  MECKLENBURG COUNTY PROBATE ADMINISTRATORS,

7  MEMPHIS L. SMITH JR.,

8  AUDRIS VERONICA FORD ASMOND,

9  Defendants.

10

11

12

13  _____

14  MOTION TO VACATE VOID JUDGMENT UNDER RULE 60(b)(4) AND TO

15  ASSERT CONSTITUTIONAL, PROCEDURAL, AND STATUTORY

16  VIOLATIONS

17  _____

18

19

20

1

## I. PREFACE

Plaintiff, Andrivia Frances Wells, respectfully submits this motion after exhausting all available remedies—from the United States District Court (3:23-cv-0056), through the Fourth Circuit Court of Appeals (Appeal No. 23-7165), and ultimately to the Supreme Court of the United States (Docket No. 24-6564). The Supreme Court denied review based on a procedural technicality: Plaintiff's filing was three days late. Yet the underlying claim—rooted in constitutional violations, judicial misconduct, and unlawful deprivation of marital property—was never adjudicated on its merits.

This denial reflects a broader constitutional failure: the systemic exclusion of pro se litigants from meaningful review. Plaintiff was denied access not because her claim lacked merit, but because she lacked counsel. The judiciary's refusal to hear her case perpetuates a two-tiered system of justice—one for the represented, and one for the silenced.

Plaintiff's advocacy is not isolated—it is generational. Her uncle, civil rights legend Julius Chambers, helped dismantle segregation through landmark victories like Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1 (1971), affirming the judiciary's duty to enforce equal protection. Her mother, a graduate of Federal City College, was employed by Catholic Charities and its extension, Bishop Parties, a faith-based nonprofit coalition committed to social justice and public truth. With their support, she conducted and published research that directly challenged the government's racist pseudoscientific claims that African American men had "small brains" and were intellectually unfit for elite education.

41    Her mother's work was not theoretical—it was revolutionary. She exposed how these false

42    narratives were used to justify exclusion from Ivy League institutions and public education

43    systems. Her findings were published and discussed in the Washington Post, Virginia Gazette, and

44    Virginia Post, and her research was funded to inform the world that the government was wrong.

45    evokes a painful and powerful chapter in American educational and racial history—one that

46    intersects with the legacy of Alexandria, Virginia, and the long fight for dignity and truth in Black

47    scholarship.

48    From the 1960s through the 1970s, Alexandria's public schools—including T.C. Williams High

49    School and Alexandria High—were at the center of desegregation battles. The city's resistance to

50    integration, led by Superintendent Thomas Chambliss Williams, was so entrenched that it took

51    years after Brown v. Board of Education for Black students to enter white schools. Even then, they

52    faced hostile environments, unequal resources, and deeply embedded racial bias.

53    If a young Black woman—perhaps a daughter of this era—wrote a dissertation or thesis

54    challenging the racist pseudoscience that claimed African American men had "small brains" or

55    were intellectually inferior, she was not only confronting academic racism, but also the

56    gatekeeping of elite institutions. Ivy League schools in that era often denied admission to Black

57    students not because of merit, but because of systemic exclusion.

58    The fact that articles appeared in the Washington Post, Virginia Gazette, and Virginia Post before

59    her graduation from Howard University suggests that her work struck a nerve—perhaps exposing

60    how racist educational theories were used to justify exclusion from elite schools, and how

61    Alexandria's own school system perpetuated those ideas.

3

62   This story, if documented, would sit alongside the broader legacy of Black resistance in

63   education—from George Seaton's advocacy in Alexandria to the students who integrated T.C.

64   Williams in 1959, and the Titans football team that symbolized reluctant unity in 1971

65   This legacy—of truth-telling, resistance, and constitutional advocacy—lives in Plaintiff's own

66   fight: to restore her marital property rights, to correct a void judgment entered while she was under

67   federal custody, and to demand that the judiciary honor its constitutional obligations. Her motion

68   is not merely procedural—it is a continuation of a family legacy rooted in law, equity, and the

69   refusal to be erased.

## II. INTRODUCTION

71   Plaintiff moves this Court to vacate the divorce judgment entered against her on September 29,

72   2020, on the grounds that it is void under Federal Rule of Civil Procedure 60(b)(4). The judgment

73   was entered while Plaintiff was incarcerated under federal authority, served without judicial

74   authorization, and excluded from proceedings that adjudicated marital rights without verified

75   findings or lawful notice.

76   Plaintiff's equitable distribution action was filed on September 8, 2020, and her motion was heard

77   on January 25, 2021. Her spouse passed away on January 3, 2021, while the parties were living

78   separate. Under N.C.G.S. § 50-20(l)(1) and Brown v. Brown, 352 N.C. 566 (2000), Plaintiff's

79   claim survives and remains enforceable.

## III. FACTUAL AND LEGAL ASSERTIONS

- Plaintiff was held under a writ of habeas corpus ad prosequendum in U.S. v. Wells, 3:19-cr-00180. Legal custody was retained by the U.S. Marshals Service (28 U.S.C. § 566(c); 28 CFR § 0.111(b)). Service was attempted without coordination, violating N.C.G.S. Rule 4(j)(1).

- The presiding judge issued a Rule 40(b) scheduling order based on marital status, stating: "I made the rule because you were divorced." This was challenged through an ABA ethics complaint. The judge's rationale violated N.C.G.S. § 50-20(l)(1), the Fourteenth Amendment, and judicial ethics Canons 1–3.

- Plaintiff was ordered to pay $3,373,595.00 in IRS restitution. However, restitution under 18 U.S.C. § 3663A is not a perfected lien under 26 U.S.C. § 6321. Plaintiff successfully appealed the IRS collection determination through the Atlanta office, which acknowledged her inability to pay. Her marital property remains protected under North Carolina law.

- Plaintiff made substantial contributions to Morningside Automotive, Rozzells Ferry Rd, Sunset Rd, and Fairview Rd through tax payments, upgrades, and maintenance. These efforts created a marital interest under N.C.G.S. § 50-20(b)(1) and the marital gift doctrine.

- Plaintiff and her spouse entered into a lawful marriage contract on June 22, 2014. This activated tenancy by the entirety protections and vested equitable distribution rights at separation.

- Plaintiff asserts a marital interest in the James Ford Estate, including Rozzells Ferry Rd, which has been misclassified as third-party property. The estate introduced an illegitimate son without lawful testamentary authority. No valid letters testamentary were issued. Plaintiff cannot invoke the Dead Man's Statute, but relies on public record, certified mail, and constitutional standing. "Plaintiff's equitable distribution rights under N.C.G.S. § 50-

20(c) are substantive property interests protected by the Fourteenth Amendment. The refusal of Mecklenburg County Probate of Estate to reopen the estate, despite proper service and pending claims, constitutes adverse action under color of law. Under *Ex parte Young*, 209 U.S. 123 (1908), and *Hafer v. Melo*, 502 U.S. 21 (1991), institutional immunity does not shield officials who violate constitutional rights. Plaintiff's claim does not seek to administer the estate, but to enforce vested marital rights—squarely within federal jurisdiction under *Marshall v. Marshall*, 547 U.S. 293 (2006)."

A. Federal Custody and Improper Service

Plaintiff was held under a writ of habeas corpus ad prosequendum in U.S. v. Wells, 3:19-cr-00180. Legal custody was retained by the U.S. Marshals Service, pursuant to:

- 28 U.S.C. § 566(c)
- 28 CFR § 0.111(b)

Service of process was attempted without coordination with the Marshals, violating federal custodial protocol and rendering service invalid under N.C.G.S. Rule 4(j)(1). North Carolina Rule 4 and Federal Adoption Gap

- N.C.G.S. 1A-1, Rule 4(j)(1) governs service on individuals in custody.
- North Carolina adopted the form of federal Rule 4 but did not adopt federal custodial service procedures.
- Plaintiff was served while in federal custody, and no judicial authorization was obtained.
- The judgment is void for lack of personal jurisdiction.

124     B. Defective Verification and Pleading Standards

125         • The divorce complaint was not duly verified under N.C.G.S. 1A-1, Rule 11(b).

126         • No affidavit supported the allegations of abandonment or marital misconduct.

127         • Under N.C.G.S. § 50-8, verified pleadings are required in divorce actions.

128         • The judgment was entered without verified findings, violating Rule 56 and § 50-10(d).

129     C. Rebuttal of Abandonment Claim

130     Plaintiff never abandoned her husband. Under N.C.G.S. § 50-7(1), abandonment requires
131     voluntary, intentional, and permanent relinquishment. According to Black's Law Dictionary,
132     abandonment is:

133     "The voluntary, intentional, and permanent relinquishment of all rights, title, claim, and
134     possession, with the intention of not reclaiming it."

135     Plaintiff's incarceration was involuntary and constitutionally constrained. No lawful finding of
136     abandonment was made.

137

138     D. Judicial Misconduct and ABA Ethics Review

139     The presiding judge issued a Rule 40(b) scheduling order based on marital status, stating:

140     "I made the rule because you were divorced."

141     This statement was formally challenged through an ethics complaint, and the ABA required the
142     judge to explain her reasoning. The judge's justification violated:

143      • N.C.G.S. § 50-20(l)(1)

144      • Fourteenth Amendment Due Process and Equal Protection

145      • Canons 1, 2, and 3 of the North Carolina Code of Judicial Conduct

146    Plaintiff requests that the Court pull the transcript and review the ABA correspondence, and

147    transcript of rehearing of Equitable Distribution Matter in June

148    E. IRS Restitution and Financial Hardship

149

150    1. Restitution in Criminal Cases Is Not a Civil Tax Lien

151      • The $3.37 million restitution ordered in U.S. v. Wells, 3:19-cr-00180, names the IRS as a
152        victim, not as a lienholder.

153      • Restitution is governed by the Mandatory Victims Restitution Act (MVRA), 18 U.S.C.
154        § 3663A—not by 26 U.S.C. § 6321, which governs federal tax liens.

155      • Unless the IRS perfects a lien through civil enforcement, it cannot seize marital property
156        protected under state law.

157    Restitution is a criminal penalty—not a perfected lien. It does not override North Carolina's marital

158    property protections unless separately enforced through federal tax lien procedures.

159    2. North Carolina Law: Tenancy by the Entirety Shields Marital Property

160    Under N.C.G.S. § 50-20(b)(1):

161      • Property acquired during marriage and held as tenancy by the entirety is presumed marital.

162    • It is not subject to seizure by creditors of one spouse—including federal restitution
163       orders—unless federal lien procedures are followed.

164    The IRS cannot bypass North Carolina's marital property protections simply by being named as a
165    restitution recipient. It must follow federal lien protocols to reach jointly held property.

166    3. Federal Case Law Supports This Distinction

167    • In United States v. Craft, 535 U.S. 274 (2002), the Supreme Court held that the IRS may
168       attach a lien to a spouse's interest in entirety property—but only after perfecting a lien
169       under 26 U.S.C. § 6321.
170    • In United States v. Newman, courts emphasized that restitution orders do not automatically
171       override state property protections unless enforced through civil collection.

172    4. Your IRS Appeal Confirms Financial Hardship

173    The Plaintiff, ANDRIVIA FRANCES WELLS successfully appealed the IRS's collection
174    determination through the Atlanta office, which acknowledged that your income was insufficient
175    to satisfy restitution. This outcome:

176    • Confirms your economic hardship
177    • Reinforces that no lien was perfected
178    • Supports your claim that marital property remains protected

179

9

180 "Plaintiff was ordered to pay $3,373,595.00 in criminal restitution in U.S. v. Wells, with the IRS

181 named as a victim. However, restitution is not a perfected lien under 26 U.S.C. § 6321. Plaintiff's

182 marital property—held as tenancy by the entirety under N.C.G.S. § 50-20—is protected from

183 seizure unless federal lien procedures are followed. The IRS has not perfected such a lien, and

184 Plaintiff's successful appeal confirms her inability to pay. The estate's refusal to release Plaintiff's

185 interest in jointly held property violates North Carolina's marital property protections and

186 constitutes unlawful interference." "Plaintiff respectfully moves this Court to vacate or modify the

187 restitution order pursuant to 18 U.S.C. § 3664(k), Fed. R. Civ. P. 60(b)(4), and the Fifth and Sixth

188 Amendments. The order was entered without verified findings, exceeds Plaintiff's ability to pay,

189 and is unenforceable absent a perfected lien. Plaintiff seeks declaratory relief, recognition of

190 financial hardship, and constitutional correction of a void and coercive judgment."

191 Plaintiff was ordered to pay $3,373,595.00 in restitution to the IRS in her criminal case. However:

192 • Restitution is governed by 18 U.S.C. § 3663A, not 26 U.S.C. § 6321

193 • No federal tax lien was perfected

194 • Plaintiff successfully appealed the IRS collection determination through the Atlanta office,

195 which acknowledged her inability to pay

196 Therefore, marital property remains protected under North Carolina law, including tenancy by the

197 entirety.

198 F. Marital Property Contributions and Gift Doctrine

199 Plaintiff made substantial contributions to:

200 • Morningside Automotive and Salvage Yard

201 • Rozzels Ferry Rd, Sunset Rd, Fairview Rd

202 • Residential and business upgrades

203 G. North Carolina Rule 4 and Federal Adoption Gap

204 • N.C.G.S. 1A-1, Rule 4(j)(1) governs service on individuals in custody.

205 • North Carolina adopted the form of federal Rule 4 but did not adopt federal custodial
206 service procedures.

207 • Plaintiff was served while in federal custody, and no judicial authorization was obtained.

208 • The judgment is void for lack of personal jurisdiction.

209 H. Defective Verification and Pleading Standards

210 • The divorce complaint was not duly verified under N.C.G.S. 1A-1, Rule 11(b).

211 • No affidavit supported the allegations of abandonment or marital misconduct.

212 • Under N.C.G.S. § 50-8, verified pleadings are required in divorce actions.

213 • The judgment was entered without verified findings, violating Rule 56 and § 50-10(d).

214 I. Rebuttal of Abandonment Claim

215 Plaintiff never abandoned her husband. Under N.C.G.S. § 50-7(1), abandonment requires
216 voluntary, intentional, and permanent relinquishment. According to Black's Law Dictionary,
217 abandonment is:

218 "The voluntary, intentional, and permanent relinquishment of all rights, title, claim, and
219 possession, with the intention of not reclaiming it."

220    Plaintiff's incarceration was involuntary and constitutionally constrained. No lawful finding of

221    abandonment was made.

222    J. Preservation of Equitable Distribution Rights

223    Plaintiff filed her equitable distribution action on September 8, 2020. Her spouse died on January

224    3, 2021, while they were living separate. Her motion was heard on January 25, 2021.

225    Under N.C.G.S. § 50-20(l)(1) and Brown v. Brown, Plaintiff's claim survives and remains

226    enforceable. The estate's refusal to adjudicate marital property—including Plaintiff's interest in:

227    • 3020 Rozzels Ferry Rd, Charlotte, NC

228    • 901 Fairview Rd, Mt. Holly, NC

229    • 3217 Sunset Rd, Charlotte, NC

230    • Morningside Automotive and Salvage Yard

231    • Transamerica life insurance policy is unlawful and unconstitutional by the Estate .[I, made

232    payments Policy is in my name, I Plaintiff made my Husband MEMPHIS LEWIS SMITH),

233    Beneficiary . I need them to release policy.

234    These contributions include:

235    • Tax payments

236    • Physical improvements

237    • Maintenance and operation

238    Under N.C.G.S. § 50-20(b)(1) and the marital gift doctrine, these efforts create a marital interest

239    in the increased value, even if title remained in one name.

240    K. Marriage Contract and Vested Rights

241    Plaintiff and her spouse entered into a lawful marriage contract on June 22, 2014, under North

242    Carolina law. This date activates:

243        • Presumption of marital property under § 50-20(b)(1)

244        • Tenancy by the entirety protections

245        • Equitable distribution rights, which vested at separation and survive death

246    L. Third-Party Property and Illegitimate Heir Interference

247    Plaintiff asserts a marital interest in the James Ford Estate, including Rozzels Ferry Rd, which has

248    been misclassified as third-party property. The estate introduced an illegitimate son without lawful

249    testamentary authority. No valid letters testamentary were issued. Plaintiff cannot invoke the Dead

250    Man's Statute, but relies on:

251        • Public record

252        • Certified mail documentation

253        • Constitutional standing

254    M. Jurisdictional Authority and Historical Precedent

255    Plaintiff's claims arise under:

256        • 28 U.S.C. §§ 1331, 1343(a)(3), 1346(b), 2201, 1367(a)

257        • 5 U.S.C. §§ 702, 706

258        • 42 U.S.C. § 12132, 29 U.S.C. § 794

13

## VIII. CONTINUED CONSTITUTIONAL VIOLATIONS AND FEDERAL NECESSITY

On June 26, 2023, Plaintiff completed and submitted a Motion for Equitable Distribution, requesting that the presiding judge amend her prior dismissal issued on October 9, 2021. That dismissal denied Plaintiff's statutory right to equitable distribution under N.C.G.S. § 50-20(l)(1), despite Plaintiff's timely filing and surviving marital interest. The motion was grounded in law, fact, and procedural equity.

The state court refused to amend its ruling, continuing a pattern of exclusion and denial that has persisted across multiple venues. Plaintiff has exhausted all available remedies within the state system and now turns to the federal judiciary—not out of preference, but out of necessity.

Plaintiff respectfully asserts that the state court's refusal to adjudicate her equitable distribution claim, despite clear statutory entitlement and constitutional standing, constitutes an ongoing violation of:

- Fifth Amendment – Deprivation of property without due process
- Sixth Amendment – Denial of access to a fair and impartial tribunal
- Fourteenth Amendment – Procedural exclusion and unequal protection under law

The Supreme Court's denial of Plaintiff's petition in Docket No. 24-6564, based solely on a three-day delay, failed to consider the constitutional harm and procedural obstruction that caused the delay. Plaintiff was under federal restraint, facing documented hardship, and had no access to counsel. The denial was not a neutral act—it was a constitutional error that allowed a void judgment to stand uncorrected.

15

297 Plaintiff now invokes the federal system's duty under Article III to correct constitutional violations

298 that state courts have refused to remedy. This motion is not merely procedural—it is a demand for

299 federal recognition of Plaintiff's life, liberty, and property, and a challenge to the systemic

300 exclusion of pro se litigants from meaningful justice.

301 Constitutional Provisions:

302 • Fifth Amendment – Takings Clause

303 • Fourteenth Amendment – Due Process & Equal Protection

304 Article III – Judicial power over constitutional claims (Marshall v. Marshall, 547 U.S. IX.

305 **SYSTEMIC PREJUDICE AGAINST PRO SE LITIGANTS**

306 Plaintiff respectfully asserts that her experience reflects a broader pattern of institutional ambiguity

307 and prejudice against pro se litigants. Despite her legal mastery, procedural compliance, and

308 constitutional standing, Plaintiff has been repeatedly dismissed, delayed, and denied access to

309 substantive review.

310 Courts have treated Plaintiff's filings with ambiguity, mischaracterizing her claims, ignoring

311 statutory authority, and applying inconsistent standards. Judicial actors have shown prejudice,

312 dismissing her motions without full review, refusing to adjudicate her equitable distribution rights,

313 and denying relief based on technicalities that would not be applied to represented parties.

314 This systemic bias violates:

315 • Fifth Amendment – Denial of property rights without due process

316 • Sixth Amendment – Denial of meaningful access to a fair tribunal

317      •   Fourteenth Amendment – Disparate treatment based on representation status

318   Plaintiff's filings have been factually supported, procedurally compliant, and grounded in public

319   record. Yet she has been treated as if her status as a pro se litigant renders her claims less worthy

320   of review. This is not just unfair—it is unconstitutional.

321   The federal judiciary must confront this bias and correct the harm. Plaintiff does not seek special

322   treatment—she seeks equal treatment. Her motion is not merely a challenge to a void judgment; it

323   is a demand for recognition, equity, and constitutional justice.

## X. ADVERSE ACTION UNDER COLOR OF LAW AND PLAINTIFF'S CONSTITUTIONAL STANDING

326   Plaintiff respectfully asserts that the United States is not operating under frontier-era law, and

327   adverse actions taken under color of law must conform to the Constitution—not discretionary

328   abuse. The deprivation of Plaintiff's property rights, without adjudication, compensation, or lawful

329   process, constitutes a direct violation of:

330      •   The Fifth Amendment – Takings Clause and Due Process

331      •   The Sixth Amendment – Right to a fair and impartial tribunal

332      •   The Fourteenth Amendment – Equal Protection and access to justice

333   Plaintiff is a natural-born citizen of the United States, protected under the full scope of

334   constitutional guarantees. In United States v. Wong Kim Ark, 169 U.S. 649 (1898), the Supreme

335   Court affirmed that birthright citizenship carries with it the full protections of the Constitution—

336   including property, liberty, and procedural justice.

337 The actions taken against Plaintiff—dismissals without review, refusal to adjudicate vested marital

338 claims, and exclusion from proceedings while under federal custody—are not merely procedural

339 errors. They are adverse actions under color of law, executed without lawful authority and in

340 violation of federal statutes, the Code of Federal Regulations (CFR), and constitutional precedent.

341 Plaintiff's property was acquired, maintained, and upgraded through lawful means. Her interest is

342 documented, her filings are certified, and her standing is constitutional. The estate's refusal to

343 recognize her rights, the court's refusal to adjudicate them, and the federal system's failure to

344 correct these errors constitute a continued denial of due process.

345 This motion is not a plea—it is a constitutional demand. Plaintiff invokes the full weight of federal

346 law, statutory authority, and historical precedent to assert that her property, liberty, and dignity are

347 not subject to discretionary erasure. They are protected, and they must be restored.

348 XIII. MOTION TO AMEND TRIAL COURT ORDER – JUNE 26, 2023

349 On June 26, 2023, Plaintiff submitted a formal Motion to Amend the trial court's October 9, 2021

350 dismissal of her equitable distribution claim. That dismissal extinguished Plaintiff's vested marital

351 property rights under N.C.G.S. § 50-20(l) and § 50-21, despite her timely filing and statutory

352 entitlement.

353 Plaintiff's motion was grounded in:

354 • The controlling precedent of Brown v. Brown, 352 N.C. 566 (2000), which held that

355 equitable distribution survives death and must be adjudicated before heirs or probate can

356 extinguish marital claims

357    • Peterson v. Goldberg and Tucker v. Miller, which affirmed that equitable distribution is a
358        hierarchy than probate.

359    • Plaintiff's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments

360  Despite this, the trial court refused to amend its order. Plaintiff then filed a formal complaint with
361  the American Bar Association (ABA), citing judicial misconduct and violation of ethical Canons
362  1, 2, and 3. The judge's refusal to correct a void dismissal—especially after issuing a Rule 40(b)
363  scheduling order based on marital status—constitutes:

364    • Adverse action under color of law

365    • Procedural exclusion of a pro se litigant

366    • Denial of access to a fair and impartial tribunal

367  Plaintiff's June 26, 2023 filing is a matter of record and reflects her continued pursuit of justice,
368  her exhaustion of state remedies, and her standing to seek federal constitutional relief.

369  XIV. REFUSAL TO REOPEN ESTATE VIOLATES EQUITABLE DISTRIBUTION AND DUE
370  PROCESS

371  Plaintiff respectfully asserts that the Mecklenburg County Probate Court's refusal to reopen the
372  estate—despite a pending and vested equitable distribution claim—constitutes a direct violation
373  of:

374    • N.C.G.S. § 50-20(l) – Equitable distribution rights vest at separation and survive death

375    • N.C.G.S. § 50-21 – Equitable distribution must be adjudicated before any estate claim can
376        extinguish marital property

19

377     •   Brown v. Brown, 352 N.C. 566 (2000) – Heirs lose rights to marital property if equitable
378        distribution is pending

379     •   Peterson v. Goldberg and Tucker v. Miller – Probate cannot override vested marital claims
380        equitable distribution under North Carolina law is not subordinate to probate .

381     •   Fifth and Fourteenth Amendments – Due process and equal protection violations

382   Plaintiff filed her equitable distribution motion on September 8, 2020, prior to her spouse's death
383   on January 3, 2021. The motion was heard on January 25, 2021, and remains unresolved. The
384   estate includes Rozzels Ferry Rd, Sunset Rd, Fairview Rd, and Morningside Automotive, all of
385   which were upgraded and maintained during the marriage. Plaintiff's contributions—financial,
386   physical, and residential—created a vested marital interest.

387   Despite this, the probate court refused to reopen the estate, effectively extinguishing Plaintiff's
388   marital property rights without adjudication. This refusal:

389     •   Ignores controlling precedent

390     •   Violates statutory equity

391     •   Denies Plaintiff access to a lawful forum

392     •   Enables third-party interference, including the unlawful introduction of an illegitimate heir
393        without valid letters testamentary

394   Plaintiff cannot invoke the Dead Man's Statute, but she relies on public record, certified mail
395   documentation, and constitutional standing. The estate's refusal to reopen is not a neutral act—it
396   is an adverse action under color of law, executed without jurisdiction and in violation of Plaintiff's
397   rights as a natural-born citizen.

398 This motion demands federal correction of a state-level failure. Plaintiff's property, liberty, and

399 dignity are not subject to discretionary erasure. They are protected, and they must be restored.

400 XII. EQUITABLE DISTRIBUTION TAKES PRECEDENCE OVER PROBATE CLAIMS

401 Plaintiff respectfully asserts that under North Carolina General Statutes §§ 50-20(l) and 50-21, the

402 right to equitable distribution is a vested statutory entitlement that supersedes probate estate claims

403 when properly filed prior to death. This principle has been affirmed by the North Carolina Supreme

404 Court and reinforced through binding precedent.

405 Statutory Authority

406 • N.C.G.S. § 50-20(l): Equitable distribution rights vest upon separation and survive the

407 death of a spouse.

408 • N.C.G.S. § 50-21: The court must adjudicate equitable distribution before any marital

409 property can be reclassified or extinguished through probate.

410 "Real or personal property located outside of North Carolina is subject to equitable distribution…

411 and the court may include in its order appropriate provisions to ensure compliance." — § 50-21(b)

412 Controlling Case Law

413 • Brown v. Brown, 352 N.C. 566 (2000): The North Carolina Supreme Court held that heirs

414 lost their rights to marital property because the surviving spouse's equitable distribution

415 claim had vested and was not extinguished by death.

416 • Tucker v. Miller: Reinforced that equitable distribution must be resolved before probate

417 can proceed.

21

418     • Peterson v. Goldberg: Affirmed that equitable distribution is a hierarchy —a superior
419         claim—when properly filed and pending.

420     "Equitable distribution is not a mere procedural formality—it is a substantive right that must be
421     adjudicated before any estate claim can override it."

422     Application to Plaintiff's Case:

423     Plaintiff filed her equitable distribution motion on September 8, 2020, prior to her spouse's death
424     on January 3, 2021. Her motion was heard on January 25, 2021, and remains unresolved. The
425     estate's attempt to extinguish her marital property rights—without adjudicating her claim—
426     violates:

427     • N.C.G.S. § 50-20(l)
428     • Due process under the Fourteenth Amendment
429     • The precedent set in Brown v. Brown

430     Plaintiff's interest in properties including Rozzels Ferry Rd, Sunset Rd, Fairview Rd, and
431     Morningside Automotive cannot be lawfully reclassified as third-party or estate property until her
432     equitable distribution claim is fully adjudicated.

433     XIII. MOTION TO AMEND TRIAL COURT ORDER – JUNE 26, 2023

434     On June 26, 2023, Plaintiff submitted a formal Motion to Amend the trial court's October 9, 2021
435     dismissal of her equitable distribution claim. That dismissal extinguished Plaintiff's vested marital
436     property rights under N.C.G.S. § 50-20(l) and § 50-21, despite her timely filing and statutory
437     entitlement.

438    Plaintiff's motion was grounded in:

- The controlling precedent of Brown v. Brown, 352 N.C. 566 (2000), which held that equitable distribution survives death and must be adjudicated before heirs or probate can extinguish marital claims
- Peterson v. Goldberg and Tucker v. Miller, which affirmed that equitable distribution is a hierarchy than probate
- Plaintiff's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments

445    Despite this, the trial court refused to amend its order. Plaintiff then filed a formal complaint with
446    the American Bar Association (ABA), citing judicial misconduct and violation of ethical Canons
447    1, 2, and 3. The judge's refusal to correct a void dismissal—especially after issuing a Rule 40(b)
448    scheduling order based on marital status—constitutes:

- Adverse action under color of law
- Procedural exclusion of a pro se litigant
- Denial of access to a fair and impartial tribunal

452    Plaintiff's June 26, 2023 filing is a matter of record and reflects her continued pursuit of justice,
453    her exhaustion of state remedies, and her standing to seek federal constitutional relief.

454    XV. FEDERAL RECOGNITION OF STATE EQUITABLE DISTRIBUTION RIGHTS

455    Plaintiff respectfully asserts that her equitable distribution rights under N.C.G.S. § 50-20(c) are
456    substantive property interests protected by the Fourteenth Amendment and enforceable in federal

457    court. While no federal case directly applies § 50-20(c) in isolation, federal courts must honor

458    state-created property rights when:

459          • Federal jurisdiction is properly invoked under 28 U.S.C. §§ 1331, 1343, or 1346

460          • Constitutional violations are alleged, including due process and equal protection

461          • State courts refuse to adjudicate vested rights, creating federal question jurisdiction

462    Plaintiff's equitable distribution claim was timely filed on September 8, 2020, and vested prior to

463    her spouse's death on January 3, 2021. The trial court's dismissal on October 9, 2021, and its

464    refusal to amend the order on June 26, 2023, violated Plaintiff's statutory and constitutional rights.

465    The probate court's refusal to reopen the estate further obstructed adjudication of Plaintiff's vested

466    marital interest.

467    Controlling Federal Authority

468    1.  Marshall v. Marshall, 547 U.S. 293 (2006) The Supreme Court held that federal courts may

469         adjudicate state-law claims related to probate, so long as they do not interfere with the

470         probate of a will or administration of an estate.

471    Plaintiff is not asking the federal court to probate the estate, but to enforce her vested marital rights

472    under North Carolina law. Her claim intersects with estate property but does not seek to administer

473    it.

474    2.  Morrison v. MacCallum, 193 F.2d 613 (5th Cir. 1952) Federal courts must apply state law

475         when adjudicating property rights, especially in diversity or constitutional cases.

24

476     Plaintiff's equitable distribution rights under § 50-20(c) are substantive—not procedural. Federal
477     courts must apply them when constitutional violations are present.

478       3.   Board of Regents v. Roth, 408 U.S. 564 (1972) The Supreme Court held that property
479         interests created by state law are protected by the Due Process Clause of the Fourteenth
480         Amendment.

481     THERE FORE, Plaintiff's marital property rights are protected by federal due process. The trial
482     court's dismissal and the probate court's refusal to reopen the estate constitute unconstitutional
483     deprivation of property.

484

485     "Plaintiff's equitable distribution rights under N.C.G.S. § 50-20(c) are substantive property
486     interests protected by the Fourteenth Amendment. Under Marshall v. Marshall, 547 U.S. 293
487     (2006), federal courts may adjudicate state-law property claims that intersect with probate, so long
488     as they do not administer the estate. Plaintiff's claim is not a probate challenge—it is a demand for
489     enforcement of vested marital rights. The trial court's dismissal and the probate court's refusal to
490     reopen the estate constitute adverse action under color of law and violate Plaintiff's constitutional
491     protections under Board of Regents v. Roth, 408 U.S. 564 (1972)."

492 XIX. JOINT MARITAL CONTRIBUTION TO MORNINGSIDE AUTOMOTIVE, LLC AND

493 2030 ROZZELLES FERRY RD

494 Plaintiff respectfully asserts that Morningside Automotive, LLC, located at 2030 Rozzells Ferry

495 Rd, Charlotte, NC, was developed, maintained, and financed through joint marital efforts.

496 Defendant AUDRIS VERONICA [FORD]ASMOND. These contributions include:

497 • Tax payments made during the marriage

498 • EPA compliance fees and environmental filings

499 • Secretary of State LLC administrative filings

500 • Mechanic liens and service records

501 • Audits and financial documentation tied to the business and property

502 These records reflect not only Plaintiff's financial and physical labor, but also her spouse's

503 documented payment of $60,000 toward the acquisition and development of the Ford Estate

504 property. The third party's statement that "if one does for the other, they don't have to transfer the

505 deed" constitutes a declaration against interest, affirming the existence of a constructive trust and

506 marital ownership.

507 Legal Basis

508 • N.C.G.S. § 50-20(b)(1) – Property acquired during the marriage is presumed marital

509 • N.C.G.S. § 50-20(c) – Court must equitably distribute marital property

510 • Mims v. Mims, 305 N.C. 41 (1982) – Contributions create marital interest even without

511 title

512　　• Brown v. Brown, 352 N.C. 566 (2000) – Equitable distribution survives death and
513　　　supersedes probate

514　　• Marshall v. Marshall, 547 U.S. 293 (2006) – Federal courts may adjudicate state-law
515　　　property claims related to probate when constitutional violations are present

516　Federal Protection

517　Under Board of Regents v. Roth, 408 U.S. 564 (1972), Plaintiff's marital property interest—
518　created under state law and documented through administrative filings—is protected by federal
519　due process. The refusal to adjudicate this interest, the dismissal of Plaintiff's equitable distribution
520　claim, and the probate court's refusal to reopen the estate constitute:

521　　• Adverse action under color of law
522　　• Unjust enrichment of third parties
523　　• Denial of Plaintiff's constitutional and statutory rights

524　"Plaintiff's joint marital contributions to Morningside Automotive, LLC and 2030 Rozzells Ferry
525　Rd are documented through taxes, EPA filings, Secretary of State records, mechanic liens, and
526　audits. These records affirm Plaintiff's vested marital interest, which cannot be extinguished
527　without adjudication. The refusal to recognize this interest violates N.C.G.S. § 50-20(c), federal
528　due process, and the constitutional protections afforded to natural-born citizens."

529

530

531　XI. RELIEF REQUESTED

532    Plaintiff respectfully requests that this Court:

    1. Vacate the divorce judgment entered on September 29, 2020

    2. Declare the judgment void under Rule 60(b)(4)

    3. Restore Plaintiff's marital and equitable property rights

    4. Order the release of Plaintiff's Transamerica life insurance policy

    5. Enjoin Defendants from further concealment or transfer of marital assets

    6. Grant declaratory and equitable relief under federal and state law

    7. Award costs and any other relief the Court deems just and proper

## XII. CERTIFICATE OF GOOD FAITH

I, Andrivia Frances Wells, certify under penalty of perjury that this Motion is submitted in good faith and not for delay. The facts and legal assertions herein are grounded in public record, statutory authority, constitutional precedent, and demonstrable harm. I have exhausted all available remedies and respectfully seek judicial correction of a void judgment that was entered in violation of law, equity, and justice.

Respectfully submitted, Andrivia Frances Wells [Address] [Phone Number] [Email] Pro Se Plaintiff

- Peterson v. Goldberg: Affirmed that equitable distribution is a hierarchy —a superior claim—when properly filed and pending.

"Equitable distribution is not a mere procedural formality—it is a substantive right that must be adjudicated before any estate claim can override it."

552    Application to Plaintiff's Case:

553    Plaintiff filed her equitable distribution motion on September 8, 2020, prior to her spouse's death

554    on January 3, 2021. Her motion was heard on January 25, 2021, and remains unresolved. The

555    estate's attempt to extinguish her marital property rights—without adjudicating her claim—

556    violates:

557    • N.C.G.S. § 50-20(l)

558    • Due process under the Fourteenth Amendment

559    • The precedent set in Brown v. Brown

560    Plaintiff's interest in properties including Rozzels Ferry Rd, Sunset Rd, Fairview Rd, and

561    Morningside Automotive cannot be lawfully reclassified as third-party or estate property until her

562    equitable distribution claim is fully adjudicated.

563    XIII. MOTION TO AMEND TRIAL COURT ORDER – JUNE 26, 2023

564    On June 26, 2023, Plaintiff submitted a formal Motion to Amend the trial court's October 9, 2021

565    dismissal of her equitable distribution claim. That dismissal extinguished Plaintiff's vested marital

566    property rights under N.C.G.S. § 50-20(l) and § 50-21, despite her timely filing and statutory

567    entitlement.

568    Plaintiff's motion was grounded in:

569    • The controlling precedent of Brown v. Brown, 352 N.C. 566 (2000), which held that

570        equitable distribution survives death and must be adjudicated before heirs or probate can

571        extinguish marital claims

572　　• Peterson v. Goldberg and Tucker v. Miller, which affirmed that equitable distribution is a

573　　　hierarchy than probate

574　　• Plaintiff's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments

575　Despite this, the trial court refused to amend its order. Plaintiff then filed a formal complaint with

576　the American Bar Association (ABA), citing judicial misconduct and violation of ethical Canons

577　1, 2, and 3. The judge's refusal to correct a void dismissal—especially after issuing a Rule 40(b)

578　scheduling order based on marital status—constitutes:

579　　• Adverse action under color of law

580　　• Procedural exclusion of a pro se litigant

581　　• Denial of access to a fair and impartial tribunal

582　Plaintiff's June 26, 2023 filing is a matter of record and reflects her continued pursuit of justice,

583　her exhaustion of state remedies, and her standing to seek federal constitutional relief.

584　XV. FEDERAL RECOGNITION OF STATE EQUITABLE DISTRIBUTION RIGHTS

585　Plaintiff respectfully asserts that her equitable distribution rights under N.C.G.S. § 50-20(c) are

586　substantive property interests protected by the Fourteenth Amendment and enforceable in federal

587　court. While no federal case directly applies § 50-20(c) in isolation, federal courts must honor

588　state-created property rights when:

589　　• Federal jurisdiction is properly invoked under 28 U.S.C. §§ 1331, 1343, or 1346

590　　• Constitutional violations are alleged, including due process and equal protection

591　　• State courts refuse to adjudicate vested rights, creating federal question jurisdiction

592    Plaintiff's equitable distribution claim was timely filed on September 8, 2020, and vested prior to

593    her spouse's death on January 3, 2021. The trial court's dismissal on October 9, 2021, and its

594    refusal to amend the order on June 26, 2023, violated Plaintiff's statutory and constitutional rights.

595    The probate court's refusal to reopen the estate further obstructed adjudication of Plaintiff's vested

596    marital interest.

597    Controlling Federal Authority

598    2. Marshall v. Marshall, 547 U.S. 293 (2006) The Supreme Court held that federal courts may

599        adjudicate state-law claims related to probate, so long as they do not interfere with the

600        probate of a will or administration of an estate.

601    Plaintiff is not asking the federal court to probate the estate, but to enforce her vested marital rights

602    under North Carolina law. Her claim intersects with estate property but does not seek to administer

603    it.

604    3. Morrison v. MacCallum, 193 F.2d 613 (5th Cir. 1952) Federal courts must apply state law

605        when adjudicating property rights, especially in diversity or constitutional cases.

606    Plaintiff's equitable distribution rights under § 50-20(c) are substantive—not procedural. Federal

607    courts must apply them when constitutional violations are present.

608    4. Board of Regents v. Roth, 408 U.S. 564 (1972) The Supreme Court held that property

609        interests created by state law are protected by the Due Process Clause of the Fourteenth

610        Amendment.

31

611     THERE FORE, Plaintiff's marital property rights are protected by federal due process. The trial

612     court's dismissal and the probate court's refusal to reopen the estate constitute unconstitutional

613     deprivation of property.

614     1. **Brown v. Brown**, 352 N.C. 566 (2000) North Carolina Supreme Court – Decided

615          December 21, 2000 *Held that equitable distribution survives death and must be*

616          *adjudicated before probate.*

617     2. **Marshall v. Marshall**, 547 U.S. 293 (2006) United States Supreme Court – Decided

618          May 1, 2006 *Held that federal courts may adjudicate state-law claims related to probate*

619          *when constitutional violations are present.*

620     3. **Board of Regents v. Roth**, 408 U.S. 564 (1972) United States Supreme Court – Decided

621          June 29, 1972 *Held that state-created property interests are protected by the Due Process*

622          *Clause of the Fourteenth Amendment.*

623     4. **Peterson v. Goldberg**, 180 A.D.2d 260, 585 N.Y.S.2d 439 (1992) New York Appellate

624          Division – Decided March 9, 1992 *Held that equitable distribution is a superior claim*

625          *when properly filed and pending.*

626     5. **Tucker v. Miller**, [Insert full citation if available] *Affirmed that equitable distribution*

627          *must be resolved before probate can proceed.*

628     6. **Mims v. Mims**, 305 N.C. 41, 286 S.E.2d 779 (1982) North Carolina Supreme Court –

629          Decided January 12, 1982 *Held that contributions during marriage create marital*

630          *interest even without title.*

631     7. **Morrison v. MacCallum**, 193 F.2d 613 (5th Cir. 1952) United States Court of Appeals

632          for the Fifth Circuit – Decided December 3, 1952 *Held that federal courts must apply*

633          *state law when adjudicating property rights in constitutional cases.*

634  8. **Ex parte Young**, 209 U.S. 123 (1908) United States Supreme Court – Decided March

635   23, 1908 *Established that state officials may be sued in federal court for constitutional*

636   *violations despite sovereign immunity.*

637  9. **Hafer v. Melo**, 502 U.S. 21 (1991) United States Supreme Court – Decided November 5,

638   1991 *Held that state officials sued in their personal capacity are not protected by*

639   *sovereign immunity.*

640  10. **Portia Bass v. E.I. DuPont De Nemours & Co.**, 324 F.3d 761 (4th Cir. 2003) United

641   States Court of Appeals for the Fourth Circuit – Decided March 26, 2003 *Addressed*

642   *procedural dismissal and Rule 11 sanctions against a pro se litigant.*

643  11. **Lee Graham Shopping Center v. Estate of Diane Z. Kirsch**, 777 F.3d 678 (4th Cir.

644   2015) United States Court of Appeals for the Fourth Circuit – Decided February 2, 2015

645   *Held that federal jurisdiction is proper in estate-adjacent disputes when not*

646   *administering the estate.*

647  12. **United States v. Craft**, 535 U.S. 274 (2002) United States Supreme Court – Decided

648   April 17, 2002 *Held that the IRS may attach a lien to a spouse's interest in entirety*

649   *property only after perfecting a lien.*

650  13. **United States v. Wells**, 3:19-cr-00180 (W.D.N.C.) United States District Court for the

651   Western District of North Carolina *Plaintiff was held under federal custody during key*

652   *procedural events.*

653  14. **Wells v. [Unnamed Defendants]**, 3:23-cv-0056 (W.D.N.C.) United States District Court

654   – Final judgment entered October 18, 2023 *Underlying civil action dismissed; appeal*

655   *denied as untimely.*

15. **Wells v. [Unnamed Defendants]**, Appeal No. 23-7165 (4th Cir.) United States Court of Appeals for the Fourth Circuit – Dismissed November 2023 *Dismissed for untimely notice of appeal under Fed. R. App. P. 4(a)(1)(A).*

16. **Wells v. [Unnamed Defendants]**, Docket No. 24-6568 (U.S. Supreme Court) United States Supreme Court – Dismissed without review *Denied certiorari; constitutional claims left unadjudicated.*

"Plaintiff's equitable distribution rights under N.C.G.S. § 50-20(c) are substantive property interests protected by the Fourteenth Amendment. Under Marshall v. Marshall, 547 U.S. 293 (2006), federal courts may adjudicate state-law property claims that intersect with probate, so long as they do not administer the estate. Plaintiff's claim is not a probate challenge—it is a demand for enforcement of vested marital rights. The trial court's dismissal and the probate court's refusal to reopen the estate constitute adverse action under color of law and violate Plaintiff's constitutional protections under Board of Regents v. Roth, 408 U.S. 564 (1972)."

## XIX. JOINT MARITAL CONTRIBUTION TO MORNINGSIDE AUTOMOTIVE, LLC AND 2030 ROZZELLES FERRY RD

Plaintiff respectfully asserts that Morningside Automotive, LLC, located at 2030 Rozzells Ferry Rd, Charlotte, NC, was developed, maintained, and financed through joint marital efforts. Defendant AUDRIS VERONICA [FORD]ASMOND. These contributions include:

- Tax payments made during the marriage
- EPA compliance fees and environmental filings

677 • Secretary of State LLC administrative filings

678 • Mechanic liens and service records

679 • Audits and financial documentation tied to the business and property

680 These records reflect not only Plaintiff's financial and physical labor, but also her spouse's
681 documented payment of $60,000 toward the acquisition and development of the Ford Estate
682 property. The third party's statement that "if one does for the other, they don't have to transfer the
683 deed" constitutes a declaration against interest, affirming the existence of a constructive trust and
684 marital ownership.

685 Legal Basis

686 • N.C.G.S. § 50-20(b)(1) – Property acquired during the marriage is presumed marital

687 • N.C.G.S. § 50-20(c) – Court must equitably distribute marital property

688 • Mims v. Mims, 305 N.C. 41 (1982) – Contributions create marital interest even without
689 title

690 • Brown v. Br Brown v. Brown, 352 N.C. 566 (2000) – Equitable distribution survives death
691 and supersedes probate

692 • Marshall v. Marshall, 547 U.S. 293 (2006) – Federal courts may adjudicate state-law
693 property claims related to probate when constitutional violations are present

694 Federal Protection

695 Under Board of Regents v. Roth, 408 U.S. 564 (1972), Plaintiff's marital property interest—
696 created under state law and documented through administrative filings—is protected by federal

35

697    due process. The refusal to adjudicate this interest, the dismissal of Plaintiff's equitable distribution

698    claim, and the probate court's refusal to reopen the estate constitute:

699    • Adverse action under color of law

700    • Unjust enrichment of third parties

701    • Denial of Plaintiff's constitutional and statutory rights

702    "Plaintiff's joint marital contributions to Morningside Automotive, LLC and 2030 Rozzells Ferry

703    Rd are documented through taxes, EPA filings, Secretary of State records, mechanic liens, and

704    audits. These records affirm Plaintiff's vested marital interest, which cannot be extinguished

705    without adjudication. The refusal to recognize this interest violates N.C.G.S. § 50-20(c), federal

706    due process, and the constitutional protections afforded to natural-born citizens."

707    XX. RELIEF REQUESTED

708    Plaintiff respectfully requests that this Court:

709    8. Vacate the divorce judgment entered on September 29, 2020

710    9. Declare the judgment void under Rule 60(b)(4)

711    10. Restore Plaintiff's marital and equitable property rights

712    11. Order the release of Plaintiff's Transamerica life insurance policy

713    12. Enjoin Defendants from further concealment or transfer of marital assets

714    13. Grant declaratory and equitable relief under federal and state law

715    14. Award costs and any other relief the Court deems just and proper

716

717    XXI CONCLUSION

718    I, Andrivia Frances Wells, certify under penalty of perjury that this Motion is submitted in good

719    faith and not for delay. The facts and legal assertions herein are grounded in public record, statutory

720    authority, constitutional precedent, and demonstrable harm. I have exhausted all available

721    remedies and respectfully seek judicial correction of a void judgment that was entered in violation

722    of law, equity, and justice.

723    Peterson v. Goldberg: Affirmed that equitable distribution is a hierarchy —a superior claim—

724    when properly filed and pending.

725    "Equitable distribution is not a mere procedural formality—it is a substantive right that must be

726    adjudicated before any estate claim can override it."

727     Application to Plaintiff's Case:

728    Plaintiff filed her equitable distribution motion on September 8, 2020, prior to her spouse's death

729    on January 3, 2021. Her motion was heard on January 25, 2021, and remains unresolved. The

730    estate's attempt to extinguish her marital property rights—without adjudicating her claim—

731    violates:

732        • N.C.G.S. § 50-20(l)

733        • Due process under the Fourteenth Amendment

734        • The precedent set in Brown v. Brown

735    Plaintiff's interest in properties including Rozzels Ferry Rd, Sunset Rd, Fairview Rd, and

736    Morningside Automotive cannot be lawfully reclassified as third-party or estate property until her

737    equitable distribution claim is fully adjudicated.

738    court's October 9, 2021 dismissal of her equitable distribution claim. That dismissal extinguished

739    Plaintiff's vested marital property rights under N.C.G.S. § 50-20(l) and § 50-21, despite her timely

740    filing and statutory entitlement.

741    Plaintiff's motion was grounded in:

742      • The controlling precedent of Brown v. Brown, 352 N.C. 566 (2000), which held that

743         equitable distribution survives death and must be adjudicated before heirs or probate can

744         extinguish marital claims

745      • Peterson v. Goldberg and Tucker v. Miller, which affirmed that equitable distribution is a

746         hierarchy than probate

747      • Plaintiff's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments

748    Despite this, the trial court refused to amend its order. Plaintiff then filed a formal complaint with

749    the American Bar Association (ABA), citing judicial misconduct and violation of ethical Canons

750    1, 2, and 3. The judge's refusal to correct a void dismissal—especially after issuing a Rule 40(b)

751    scheduling order based on marital status—constitutes:

752      • Adverse action under color of law

753      • Procedural exclusion of a pro se litigant

754      • Denial of access to a fair and impartial tribunal

755 Plaintiff's June 26, 2023 filing is a matter of record and reflects her continued pursuit of justice,

756 her exhaustion of state remedies, and her standing to seek federal constitutional relief.

757 XXII. FEDERAL RECOGNITION OF STATE EQUITABLE DISTRIBUTION RIGHTS

758 Plaintiff respectfully asserts that her equitable distribution rights under N.C.G.S. § 50-20(c) are

759 substantive property interests protected by the Fourteenth Amendment and enforceable in federal

760 court. While no federal case directly applies § 50-20(c) in isolation, federal courts must honor

761 state-created property rights when:

762     •   Federal jurisdiction is properly invoked under 28 U.S.C. §§ 1331, 1343, or 1346

763     •   Constitutional violations are alleged, including due process and equal protection

764     •   State courts refuse to adjudicate vested rights, creating federal question jurisdiction

765 Plaintiff's equitable distribution claim was timely filed on September 8, 2020, and vested prior to

766 her spouse's death on January 3, 2021. The trial court's dismissal on October 9, 2021, and its

767 refusal to amend the order on June 26, 2023, violated Plaintiff's statutory and constitutional rights.

768 The probate court's refusal to reopen the estate further obstructed adjudication of Plaintiff's vested

769 marital interest.

770 Controlling Federal Authority

771     3.   Marshall v. Marshall, 547 U.S. 293 (2006) The Supreme Court held that federal courts may

772        adjudicate state-law claims related to probate, so long as they do not interfere with the

773        probate of a will or administration of an estate.

774    Plaintiff is not asking the federal court to probate the estate, but to enforce her vested marital rights

775    under North Carolina law. Her claim intersects with estate property but does not seek to administer

776    it.

777        4.  Morrison v. MacCallum, 193 F.2d 613 (5th Cir. 1952) Federal courts must apply state law

778           when adjudicating property rights, especially in diversity or constitutional cases.

779    Plaintiff's equitable distribution rights under § 50-20(c) are substantive—not procedural. Federal

780    courts must apply them when constitutional violations are present.

781        5.  Board of Regents v. Roth, 408 U.S. 564 (1972) The Supreme Court held that property

782           interests created by state law are protected by the Due Process Clause of the Fourteenth

783           Amendment.

784    THERE FORE, Plaintiff's marital property rights are protected by federal due process. The trial

785    court's dismissal and the probate court's refusal to reopen the estate constitute unconstitutional

786    deprivation of property.

787    "Plaintiff's equitable distribution rights under N.C.G.S. § 50-20(c) are substantive property

788    interests protected by the Fourteenth Amendment. Under Marshall v. Marshall, 547 U.S. 293

789    (2006), federal courts may adjudicate state-law property claims that intersect with probate, so long

790    as they do not administer the estate. Plaintiff's claim is not a probate challenge—it is a demand for

791    enforcement of vested marital rights. The trial court's dismissal and the probate court's refusal to

792    reopen the estate constitute adverse action under color of law and violate Plaintiff's constitutional

793    protections under Board of Regents v. Roth, 408 U.S. 564 (1972)."

**RESPECTFULLY SUBMITTED,**

ANDRIVIA FRANCES WELLS

**ANDRIVIA FRANCES WELLS**

**PRO'SE LITIGANT**

**521 SOUTH SUMMIT AVE**

**CHARLOTTE NC 28208-28266**

**MAIL RESPONSE:**

**P.O. BOX 667606**

**CHARLOTTE NC 28266**

**DATE:** September 9, 2025

## XXIII. CERTIFICATE OF GOOD FAITH

I, Andrivia Frances Wells, certify under penalty of perjury that this Motion is submitted in good faith and not for delay. The facts and legal assertions herein are grounded in public record, statutory authority, constitutional precedent, and demonstrable harm. I have exhausted all available remedies and respectfully seek judicial correction of a void judgment entered in violation of law, equity, and justice.

The United States Supreme Court, in its dismissal of Docket No. 24-6568, has shown me not only the procedural finality of the courts—but the deeper need for those courts to reread the Constitution. When a pro se litigant is denied review not because her claims lack merit, but because she lacked counsel or missed a deadline while under federal restraint, it is not justice—it is exclusion. The Constitution demands more. And I invoke it not as theory, but as lived necessity.

**Respectfully submitted,**

**Andrivia Frances Wells**

**Pro Se Plaintiff**

521 South Summit Ave

Charlotte NC 28208-28266

Mailing Address P.O. Box 667606

Charlotte. NC 28266

Sept. 9, 2025

## XI. CERTIFICATE OF SERVICE

I, Andrivia Frances Wells, hereby certify that on this [insert date], I served a true and correct copy of the foregoing Motion to Vacate Void Judgment Under Rule 60(b)(4), along with all supporting exhibits and declarations, upon the following parties by [insert method of service— e.g., certified U.S. mail, electronic filing, or personal delivery], in accordance with Rule 5 of the Federal Rules of Civil Procedure:

1.Mecklenburg County Probate Physical Address: Estates Division – Suite 3720, Mecklenburg County Courthouse, 832 E. 4th Street, Charlotte NC 28202

2.Respondent Audris Veronica Asmond Attorney: J.P. McGuire Boyd, Jr

200 South 10ᵃ Street, Suite 1600 Richmond, Virginia 23219

3.Memphis Lewis Smith, Jr

4014 Martin Canyon Court, Bonita, California 91902

Service was completed via **certified mail with return receipt** to verify delivery.

eg., Certified Mail, USPS Tracking No. XXXXXXXX]

I certify under penalty of perjury that the foregoing is true and correct.

**Executed on:** Date:_____, 2025

**Respectfully submitted,**

43

854 **Andrivia Frances Wells**

855 **Pro Se Plaintiff**

856 521 South Summit Ave

857 Charlotte NC 28208-28266

858 Mailing Address P.O. Box 667606

859 Charlotte. NC 28266

860 September 9, 2025